THERIOT, J.
|2The defendant, the City of Baton Rouge and Parish of East Baton Rouge (City) appeals the judgment of the Nineteenth Judicial District Court rendered in favor of the plaintiff, Pot-O-Gold Rentals, LLC (Pot-O-Gold). On motion for summary judgment, the trial court determined that the plaintiffs waste removal services were not taxable as gross proceeds derived from the lease or rental of tangible personal property and ordered the City to refund taxes that had been paid by the plaintiff under protest. For the following reasons, we reverse and remand.

STATEMENT OF THE FACTS

Pot-O-Gold'is a Louisiana limited liability company that offers a variety of waste management services. Relevant here, Pot-O-Gold owns portable toilets and holding tanks that it leases to customers, and offers cleaning and sanitation services for these rented toilets and tanks. Pot-O-Gold’s related waste management services include the pumping, removing, hauling, and disposal of generated or collected human waste in its rented toilets and tanks. Pot-O-Gold also offers cleaning and sanitation services for portable toilets and holding tanks owned by others and does riot require rental customers to purchase its sanitation or cleaning service. However, if a rental customer chooses to reject related sanitation or cleaning service, the customer is charged a higher rental fee.
The present dispute derives from a 2011 sales and use tax compliance audit of Pot-O-Gold’s operations conducted by the City for the period from January 1, 2007 through December 31, 2008. The audit revealed that, although Pot-O-Gold collected taxes on its rentals of portable toilets and holding tanks, it had not generally collected taxes for the cleaning or sanitation services it provided in connection with these rentals or for fuel | ¡¡surcharges on such rentals.[1] Thus, the City issued a $69,821.65 assessment to Pot-O-Gold, representing the sum of sales taxes owed ($37,160.92) along with interest ($23,-370.14) and penalties ($9,290.59). Pot-O-Gold paid the assessment under protest and filed the instant suit seeking recovery thereof.

*1191
ASSIGNMENTS OF ERROR

On appeal, the City argues that the trial court erred in granting Pot-O-Gold’s motion for summary judgment. Specifically, the City contends:
1) The trial court erred by allowing the splitting and dividing of proceeds from rental contracts into taxable and nontaxable components.
2) The trial court erred by failing to recognize that services, ordinarily nontaxable if standing alone, may nonetheless be taxable as gross proceeds derived from a lease or rental.
3) The trial court erred by inappropriately relying on and misinterpreting relevant jurisprudence.
4) The trial court erred by relying on non-binding Revenue Rulings and a letter sent by the Louisiana Department of Revenue.
5) The trial court erred by granting Pot-O-Gold’s motion for summary judgment even though there were outstanding issues of material fact.

STANDARD OF REVIEW

An appellate court must review a grant of summary judgment de novo, utilizing the same criteria that govern the trial court’s consideration of whether or not summary judgment is appropriate. See, e.g., Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152, 1155; J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202 writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. |4Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). Summary judgment is designed to ensure just, speedy, and inexpensive determination of disputes and is thus favored under Louisiana law. La. C.C.P. art. 966(A)(2).

DISCUSSION

In its first two assignments of error, the City essentially argues that the trial court erred by misinterpreting and misapplying statutory tax law.[2] The Louisiana Constitution allows local governments to levy and collect taxes on “the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law ...”. La. Const, art. VI, § 29(A). In accordance with this allowance, the City enacted Ordinance 10127 § 2, which provides in relevant part:
(a) There is hereby levied from and after January 1, 1995, for general municipal purposes, a tax upon the sale at retail, the use, the consumption, the distribution and storage as defined herein, and upon the lease or rental of tangible personal property and the sale of services within the City at a rate of two (2%) percent. This tax is levied under the general taxing authority conferred upon the City, as ratified by Article 6, Section 6 of the Louisiana Constitution of 1974.
[[Image here]]
(e) Each of the taxes specified herein shall be levied upon the following:
‡ ⅜ ⅜
(3) The gross proceeds derived from the lease or rental of tangible personal property, where the lease or rental of *1192 such | ^property is an established business, or part of the same is incidental or germane to the business. [Emphasis added.]
As stated above, Pot-O-Gold’s business operations included the leasing of portable toilets and holding tanks to customers and providing related cleaning and sanitation services. Although the leased toilets and tanks do constitute taxable tangible personal property,[3] Ordinance 10127 § l(p) limits the definition of taxable “services” so as to exclude the waste removal or cleaning services provided by the appel-lee.[4] Thus, standing alone, Pot-O-Gold’s services would ordinarily be nontaxable under the plain language of Ordinance 10127. Nonetheless, Pot-O-Gold may still incur tax liability for services that relate to the lease of tangible personal property (toilets and tanks) if the proceeds from these services constitute part of the “gross proceeds” derived from the rental of taxable tangible personal property. See Ordinance 10127 § 2(e)(3).
In its motion for summary judgment, Pot-O-Gold correctly noted that its furnished services were not an enumerated taxable service. Likewise, Pot-O-Gold contended payments received for these ordinarily nontaxable services could not be regarded as “gross proceeds” since the services were optional, not required for the rental of the toilets and tanks, and offered as an independent service separate and apart from its rental operations. Pot-O-Gold additionally pointed out that “gross proceeds” was not statutorily defined and cited jurisprudence that indicated any ambiguity or uncertainty |fiin statutory language should be resolved against the taxing authority and in favor of the taxpayer.
Previously, this court has been called upon to interpret the statewide counterpart to Ordinance 10127, La. R.S. 47:302, which provides in relevant part:
B. There is hereby levied a tax upon the lease or rental within the state of each item or article of tangible personal property, as defined herein; the levy of said tax to be as follows:
(1) At the rate of two per centum (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to the said business. [Emphasis added.]
This court has explained that sales and use taxes, like the ones levied by La. R.S. 47:302 and Ordinance 10127, are not imposed on conveyed property itself, but rather are imposed on the event incident to the initial use of conveyed property by a purchaser or lessee. See A.M.A. Distributors, Inc. v. School Board of the Parish of Iberville, et al., 98-0373 (La.App. 1st Cir.4/1/99), 729 So.2d 765, 767, writ denied, 99-1255 (La.6/25/99), 746 So.2d 600. As it is the transaction which is subject to taxation by the state or local municipality, when assessing the taxability of an agreement involving the lease of tangible per *1193 sonal property, there is ordinarily no breakdown into taxable and nontaxable elements. See McNamara v. Electrode Corp., 418 So.2d 652, 661 (La.App. 1st Cir.), writ denied, 420 So.2d 986 (La.1982). To determine whether the transaction is taxable, we must examine the “essence of’ or the “true object of’ the transaction. Id. at 662. The substance of the agreement, not the wording of the contract or the separation of ancillary options or services, determines the taxability of a transaction. See Id.
Enterprise Leasing Co. of New Orleans v. Curtis is illustrative. There, following an audit of the plaintiff corporation’s operations, Livingston Parish assessed Enterprise $25,212.01 in unpaid sales and use taxes. Enterprise Leasing Co. of New Orleans v. Curtis, 2007-0354 (La.App. 1st Cir.11/2/07), 977 So.2d 975, 976-77, writ denied, 2007-2320 (La.2/1/08), 976 So.2d 719. Enterprise paid the assessment under protest and sought a refund. Id. at 977. Enterprise rented automobiles to customers; when renting a vehicle, customers could either choose to accept personal responsibility for any damage that might occur to the vehicle, or could purchase collision damage waiver (CDW). Enterprise had not collected sales taxes for the CDW payments. Id. at 976-77. The trial court found in favor of the parish, holding that the CDW payments constituted part of the gross proceeds derived from the rental of the tangible personal property automobile. Id. at 977.
On appeal, Enterprise argued that the sale of CDW was an optional, separate purchase that did not constitute an integral part of an indivisible rental contract and should not have been regarded as the gross proceeds of the rental of tangible personal property. Id. at 979. This court rejected Enterprise’s argument and affirmed the trial court’s decision on this point. Id. at 981. We explained that Enterprise and its customers had contracted for CDW as part of the rental agreement, noted that the provision of CDW could only be made available in connection with the automobile rental, and concluded that the “real object” of the transactions at issue was the lease of a tangible personal property vehicle. Id. at 980. Although Enterprise attempted to avoid tax liability by noting that it offered other optional services not subject to sales and use taxes, like accident insurance and supplemental liability protection, we found that any other offered nontaxable ^services were immaterial to the determination of the taxa-bility of the rental transaction. See Id. at 980-81.
Subsequent to our decision in Enterprise, the Second Circuit decided a similar dispute using the same rationale in Rent-A-Center East, Inc. v. Lincoln Parish Sales and Use Tax Commission, 46,054 (La.App.2d Cir.3/9/11), 60 So.3d 95, 97, writ denied, 2011-0713 (La.5/20/11), 63 So.3d 985. There, the plaintiff corporation leased various items of tangible personal property to its customers. When renting property from Rent-A-Center (RAC), customers had the option to accept personal responsibility for damage to the rented property or they could purchase optional liability damage waiver (LDW) coverage, provided through a separately signed addendum to the rental agreement. Id. RAC had not collected sales taxes on the proceeds derived from this LDW coverage. Id. On appeal of summary judgment granted in favor of the parish the Second Circuit affirmed, concluding that the essence of the transactions was the rental of tangible personal property. Id. at 99. Like in Enterprise, although the LDW proceeds would ordinarily have been nontaxable, because the service was incidental to the rental, the money collected for the LDW *1194 coverage constituted taxable gross proceeds. Id.
In the instant case, the trial court relied heavily on the separability of the rendered services in granting Pot-O-Gold’s motion for summary judgment. For example, the trial court noted that lessees were not required to purchase the Pot-O-Gold’s cleaning and sanitation services and that these services were offered to other parties independently from the appellee’s rental operations. Despite recognizing that in the combined lease-services contracts at issue, the “true object” of the transactions was the furnishing of toilets and tanks, the trial court nonetheless concluded that nontaxable [ services continued to be nontaxable, regardless of the relationship between the services and the leased property. This finding does not comport with established jurisprudence and was in error.
While the Second Circuit may have relied, in part, on the fact that the disputed LDW service could not be purchased from anyone other than RAC, see Rent-A-Center, 60 So.3d at 99, the possibility of purchasing the disputed service from another party is not dispositive. Rather, a court must review the totality of the circumstances surrounding the event incident to the initial use of the rented property, i.e. the transaction itself, to determine its tax-ability. See A.M.A. Distributors, Inc., 729 So.2d at 767.
Here, the cleaning and sanitation services were provided in connection with, and incidental to, the rental of tangible personal property (toilets and tanks). We agree with the trial court that the “true object” of the transactions between Pot-O-Gold and its customers was the provision of the toilets and tanks. This finding should have determined the taxability of the entire transaction. Money collected for ordinarily nontaxable cleaning and sanitation services became taxable gross proceeds of the lease by virtue of the inexorably intertwined relationship between the services and the leased property. It is of no import whether the services were optional for lessees, whether the services could be purchased from another party, whether the services could be rejected, or whether the services could be purchased independently from the plaintiff by others.

CONCLUSION

Reviewing the trial court’s grant of summary judgment de novo, we find that the grant of summary judgment was in error. The judgment of the trial court is reversed and this case is remanded for further proceedings in | inaccordance with this holding. All costs of this appeal are assessed to the appellee, Pot-O-Gold Rentals, LLC.
REVERSED AND REMANDED.
McDONALD J. dissents and assigns reasons.
HIGGINBOTHAM, J. dissents and adopts McDONALD’s, J. reasons.

. Although the City assessed taxes on both fuel surcharges and related services, the parties mutually agreed in open court that arguments relating to the cleaning, sanitation, and waste removal services likewise apply to the fuel surcharge issues. Thus, discussion here will be limited to those services fully briefed on appeal.

. We find that the trial court’s grant of summary judgment constitutes reversible error as per the appellant’s first two assignments of error. Thus, we need not consider assignments of error 3 through 5.

. The common law terminology "tangible personal property” is used to comport with the relevant Louisiana tax law(s). The phrase "tangible personal property” as used in sales/ use tax statutes is equivalent to "corporeal moveable property” as defined by the Louisiana Civil Code. See McNamara v. Electrode Corp., 418 So.2d 652, 656 (La.App. 1st Cir.1982).

. EBR Sales & Use Tax Ordinance 10127 § l(p) limits taxable services to the following: furnishing of rooms by hotels and tourist camps; sales of admissions to places of amusement; furnishing of storage or parking privileges; furnishing of printing services; furnishing of laundry services; furnishing of cold storage space; and the furnishing of repairs to tangible personal property.